**FANNIN INVESTMENT COMPANY, Inc.**

v.

**UNITED STATES of America.**

Civ. A. No. 6830.

United States District Court
N. D. Georgia,
Atlanta Division.

July 5, 1961.

Motion to Amend Findings Overruled
Aug. 21, 1961.

Order of Court Reopening Case
Sept. 15, 1961.

Wilson, Branch & Barwick, Atlanta, Ga., for plaintiff.

Charles D. Read, Jr., U. S. Atty., Atlanta, Ga., by Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., for defendant.

HOOPER, Chief Judge.

Plaintiff, Fannin Investment Company (formerly Willingham-Little Stone Company) in the year 1953 was engaged in the quarrying of limestone at Whitestone, Georgia. On its tax return for the year 1953 it claimed a depletion deduction pursuant to 26 U.S.C.A. § 114(b) (3, 4). The plaintiff contends such allowance should be based upon the cost of terrazo and marble roofing chips, together with the cost of bagging the same, but the Government contends the allowance should be based upon the constructive sales price of the stone before it is ground into small chips and placed in bags. It is stipulated between the parties that the plaintiff can recover nothing in this case if the above contention of the Government is sustained. The controlling question therefore to be answered by this Court is a determination of the cut-off point between plaintiff's operations as a miner and subsequent operations which might be termed as manufacturing or further processing for sale. A short statement of the facts is necessary to an understanding of the ruling here made.

To obtain the above products from its mine the stone is blasted and leaves the mine in lumps of rock approximately the size of a football. These stones were then fed into a primary crusher from which they emerged in maximum sizes of five inches diameter. These stones of five inch diameter while passing from the primary crusher on a belt are manually divided by selecting the stones which are white and putting in separate piles others referred to as "off-color." It is just at this point that the controversy arises, the Government contending that these five inch white lumps of limestone constitute the "first commercially marketable product" on which depletion is computed, the taxpayer however, denying that contention.

These lumps of white stone are then recrushed and ground in a "hammer mill" and most of it comes out in sizes three-eighths to one-fourth inch, or one-fourth to one and one-eighth inches, and these sizes are put in bags, weighed, and are ready for shipment. It is the taxpayer's contention that the "gross income from the property" contemplated by 26 U.S. C.A. § 114(b) (4) (B) is represented by the sales price of the chips in the bags and includes the cost of the bags and the labor of placing the product in the bags, while the Government contends that the last "ordinary treatment process" of the taxpayer as a miner terminates when the five inch lumps of stone leave the primary crusher. On the basis of authorities cited below this Court feels compelled to accept the contentions of the Government.

The Facts In The Record.

There is no material dispute as to any of the facts in the case but a sharp difference as to the legal conclusions to be drawn therefrom.[1]

We are not here concerned with the computation of depletion allowances based on products of the mine in the form of fine dust (sold by the taxpayer as agricultural limestone), nor with portions sold for road building and other purposes. We are concerned only with the question as to whether or not the five inch lumps of white stone after leaving the primary crusher is the end of the "ordinary treatment processes" of the mine for the purpose of computing the depletion allowance. Under stipulation of the parties we are not even concerned with a depletion allowance based upon the constructive sales price of the tax-

---

[1] Whether the products of the mines constitute marble as contended by the Government or other products including chemical grade limestone, as contended by the taxpayer, is not necessary to be decided in view of the ruling made by the Court; much evidence however, was adduced on that issue.

payer to itself of said five inch lumps for the purpose of further processing the same into terrazo chips. Further facts in the record will be discussed below.

### The Controlling Authorities.

The question at issue must be determined in the light of principles announced by the United States Supreme Court in the case of United States v. Cannelton Sewer Pipe Company, 364 U.S. 76, 77, 80 S.Ct. 1581, 4 L.Ed.2d 1581, relied upon by the Government. That case reviews the legislative history of the statutes pertaining to depletion allowances of all types of mines, and clears up many points of confusion theretofore existing. It is there ruled immaterial that the first commercially marketable mineral product of the mine can not be quarried and sold at a profit. It is pointed out if the product of the mine cannot be profitably extracted there is no gross income from the same and therefore no depletion allowance. It makes clear, however, that if there is any point at which the minerals may be marketed the gross income from the same shall be computed at that stage. In the case cited it appeared that the clay and shale from the mine would only bring $1.60 to $1.90 per ton at the mine and would cost approximately $5 per ton to transfer it to the nearest market. The miner, however, processed the clay into products of much greater value and in doing so says the Supreme Court, it was acting as a manufacturer and was selling the clay to itself.

The record in this case is rather full and contains many details as to sales throughout the United States from other mines of products similar to those involved in the instant case. Except for the stipulation made by the parties in this case it might be necessary for this Court to go more fully into the question as to marketability and market price of the five inch stones involved in this case. The fact that it was not actually sold on the market but was used by the taxpayer itself in making terrazo chips would seem to eliminate a con-

sideration of such circumstances, particularly in view of the stipulation between the parties that the plaintiff cannot recover herein unless the chips in the bags constitute the first marketable product.

Another question would be raised if the Government were contending that the depletion allowance should be computed on the basis of a constructive sales price of all the stone based on its value as road stone, rubble, etc. The Government is recognizing as a cut-off point the emergence of the lumps of five inch white stone as it leaves the primary crusher. The taxpayer is not in this case insisting upon a constructive sale of the aforesaid lumps to itself for purposes of grinding it into chips and putting it in bags. If so, further determination would have to be made by this Court. Such a situation existed in the case of Commissioner of Internal Revenue v. Halquist, 7 Cir., 291 F.2d 49. In that case, there was no issue as to the income from a part of the crushed stone which was not suitable as building stone; the taxpayer extracted from the original mineral products the stone which could be used for building, or for veneer. The court held that the depletion allowance should be computed by "an allocation of the receipts from the sale of building stone attributable to the rough, uncut blocks as removed from the quarry, prior to delivery to cutters for processing."

Let the Government within twenty days present to this Court a Judgment in accordance herewith.

### On Motion to Amend Findings.

In a motion to amend previous Findings by the Court able and zealous counsel for plaintiff insist that this Court has misinterpreted the stipulation between the parties under which the case was tried.

Paragraph Five of the stipulation filed April 20, 1961 reads as follows:

"If the Court finds, as contended by the defendant, that the first commercially marketable product of the taxpayer's quarry is the mineral im-

mediately after it passes through the primary crusher, then the plaintiff shall recover nothing in either Civil Action No. 6830 or Civil Action No. 6831."

This Court is still of opinion that the white terrazo chips and the roofing chips ground, screened and put in bags, does not constitute the first commercially marketable product of the plaintiff's mines.

The following figures will illustrate the greatly increased value of the limestone in question after it has passed through the second crusher, screened, and placed in bags. Plaintiff's gross sales for the year 1954 are as follows:

| | |
|---|---|
| Limestone | $387,220.83 |
| White terrazo chips | 767,049.63 |
| Roofing chips | 121,262.48 |
| Crushed stone | 67,963.58 |

Figures for 1953 are comparable to the above.

As stated by counsel, and shown by the evidence, plaintiff sold about ninety-five per cent of all of the white terrazo chips sold in the United States. On the other hand, exhibits placed in evidence by the Government covering the limestone mining over the country as a whole, show the following:

| | |
|---|---|
| Crushed limestone sold annually in the United States | 200,000,000 tons |
| Sold as crushed stone for road building | 130,000,000 tons |
| Sold for flux | 40,000,000 tons |
| Sold in Georgia (road building and concrete) | 400,000 tons |
| Sold by taxpayer as road stone | 75,000 tons |

The Government is allowing to the taxpayer the cost of blasting the rock, moving it to the entrance of the mine, putting it into the primary crusher, and allows it the actual or constructive sales price of the same immediately after it passes from the primary crusher in maximum sizes of five inches.

The taxpayer seeks to increase this depreciation allowance to cover the following:

Passing the same along conveyor belts, separating the white from the colored stones, running the white stones through another crusher, bringing it down into fine chips (one-eighth inch to three-eighth inches in size), and putting these chips into bags ready for shipment.

This Court is still of the opinion that decisions of the courts in United States v. Cannelton Sewer Pipe Company, 364 U.S. 76, 77, 80 S.Ct. 1581, 4 L.Ed.2d 1581, and Commissioner of Internal Revenue v. Halquist, 7 Cir., 291 F.2d 49, demand a finding that the ordinary mining processes of the plaintiff ceased when the stone left the primary crusher, that the subsequent processes were not "ordinary treatment processes" involved in mining operations, and that the further grinding of the white limestone into small chips and bagging the same, were processes applicable to a corporation engaged in making and selling terrazo chips, and not engaged in ordinary mining processes. As pointed out in these cases, it would seem that the taxpayer was in effect selling to itself the products of the mine after they left the first rock crusher, and using the same in the manufacture of chips, and the bagging of the same.

Motion to amend the Findings of the Court heretofore made is therefore overruled.

### Order Of Court Reopening Case

Plaintiff's counsel has this day filed with the Court a reply to the order of this Court of September 8, 1961. In addition to said reply plaintiff's counsel alleges that the stipulation between the parties upon which this case was tried does not correctly represent the agreement, and in effect asks that this Court modify the same.

The Government has heretofore suggested to the Court that if the Court sees fit it may reopen the case so that the Government will have opportunity to introduce further proof concerning the customs and practices of other miners in regard to selling limestone for chemical and agricultural purposes. This suggestion by the Government is adopted by the Court.

Wherefore, the Clerk is directed to assign this case for further hearing on a future non-jury calendar for purposes of hearing further evidence as above set forth, for purpose of hearing plaintiff's motion that the stipulations be amended, and for further consideration as to the final judgment to be entered in the case.